**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 98-726

RAYMOND LEE, APPELLANT,

V.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided March 14, 2000     )

*Raymond Lee*, *pro se*.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Gary E. O'Connor*, all of Washington, D.C., were on the pleadings for the appellee.

Before NEBEKER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

STEINBERG, *Judge*: The pro se appellant, veteran Raymond Lee, appeals a March 18, 1998, decision of the Board of Veterans' Appeals (Board or BVA) that determined that an effective date earlier than September 20, 1994, for the payment of monthly disability benefits under the total disability insurance provision (TDIP) of the appellant's National Service Life Insurance (NSLI) policy was not warranted. Record (R.) at 10. The appellant has filed a brief. The Secretary has filed a motion for summary affirmance, and the appellant has filed a response in opposition to that motion. For the reasons that follow, the Court will deny the Secretary's motion, reverse the Board decision, and remand the matter.

## I. Facts and Procedural History

The following facts are undisputed. The veteran had active service in the U.S. Army from June 1948 until May 1952. R. at 12. He filed with the Department of Veterans Affairs (VA) an

application for NSLI coverage, which became effective on July 7, 1948. R. at 14-15. In May 1953, he filed an application for renewal of his NSLI policy on the five-year-level-premium term plan. R. at 20. In March 1960, he filed an application for a TDIP to be added to his NSLI policy, and the addition of that TDIP to his policy was approved in April 1960. R. at 25-28. The TDIP in effect for the veteran's policy included the following terms:

> If the Insured becomes totally disabled before his/her 65th birthday, and remains so disabled for at least 6 consecutive months, there will be paid to the Insured, for as long as the total disability continues, a monthly income of $10.00 for each $1,000 of face amount of this policy, and the payment of the premiums for this provision (as well as for this policy) will be waived, subject to the following clauses (A) to (L):
>
> (A) Total disability is defined as any one of the following:
>
>> (1) Any impairment of mind or body which continuously renders it impossible for the Insured to follow any substantially gainful occupation,
>>
>> (2) The permanent loss of the use of both feet, or of both hands, or of both eyes, or of one foot and one hand, or of one foot and one eye, or of one hand and one eye,
>>
>> (3) The total loss of hearing of both ears, or
>>
>> (4) The organic loss of speech.
>
> . . . .
>
> (D) The disability income payments will be paid from the first day of the seventh consecutive month of continuous total disability, except that if the total disability is not due to one of the specific causes listed in (A)(2), (A)(3), and (A)(4) above, the disability income payments will not relate back to a date more than 6 months prior to receipt at [VA] of the required proof . . . .

Nov. 1, 1999, Response (Resp.), Appendix (App.) D and E. *But see* R. at 87-88, 113-14 (text of paragraph (para.) (D) that was in veteran's possession referred to para. (A)(4) only).

On May 1, 1979, the veteran requested a waiver of his NSLI premiums on the ground that at the end of 1977 he had had major surgery and that he was "now" disabled. R. at 30. Although there is a notation on the veteran's letter that his request was answered (R. at 30), there is no indication in the record on appeal as to the content of that answer. In November 1993, the veteran

2

notified VA that he was then totally disabled due to a heart condition and requested information on how to apply for a monthly payment under the TDIP. R. at 32. In December 1993, VA notified the veteran as follows:

> To file a claim for disability insurance benefits, you should complete and return the enclosed claim form.
>
> If you have been found to be totally disabled by the Social Security Administration [(SSA),] it will not be necessary for you to have the medical portion of the claim completed.
>
> It is important that you return your claim as soon as possible because the beginning date of benefits is determined by when we receive proof of your total disability.

R. at 34.

In March 1995, the veteran filed that application, accompanied by an SSA decision that he was totally disabled as of November 8, 1992. R. at 37-43. In April 1995, the VA Insurance Center (VAIC) notified the veteran that he had been found to be totally disabled for insurance purposes and noted that his NSLI policy provided that "payments will begin six months prior to the date proof of your total disability was received" and that he was entitled to monthly payments of $150.00 beginning on September 20, 1994. R. at 45. The VAIC requested additional information from the SSA as to the veteran's claim that he had been found to be totally disabled as of November 1992. R. at 47-48. The veteran filed a Notice of Disagreement as to the determination "that September 20, 1994, is the commencement date for [his] eligibility [for] benefit payments." R. at 50-51. He filed part II (report of attending physician) of the TDIP application. R. at 56. Several days later, the VAIC, citing para. (D) of the TDIP, confirmed its determination as to the effective date of TDIP payments and sent under separate cover a copy of the TDIP. R. at 53, 87-89. The veteran requested information on the TDIP and the VAIC's adjudication process and requested a hearing. R. at 58-59. The VAIC replied with a brief explanation of TDIP para. (D) and a notification that a hearing would be scheduled. R. at 62-63.

At a September 1995 hearing before the Honolulu, Hawaii, VA Regional Office (RO), the veteran testified under oath that, although he had been disabled since 1977, he had continued to work part time until November 8, 1992 (his 62nd birthday), when he applied to SSA for total disability benefits. R. at 74. He argued that his TDIP payments should begin as of November 8, 1992, because

3

that is the date that the SSA had determined that he had become totally disabled. R. at 75. In December 1995, the VAIC issued a Statement of the Case (SOC) that restated the language of TDIP para. (D). R. at 80-85. The veteran filed a Substantive Appeal to the Board (R. at 92-100) and requested a hearing before the Board (R. at 102).

In an April 28, 1997, BVA decision, the Board remanded the claim in order to provide the veteran with the BVA hearing that he had requested and still desired. R. at 126-28. At a May 1997 hearing before the Board sitting in Honolulu, the veteran testified under oath and argued that it was not proper to make his TDIP payments effective only as of September 1994 but that the payments should have begun as of November 8, 1992, the date on which he was found to have been totally disabled by the SSA. R. at 130, 132. In an August 19, 1997, BVA decision, the Board remanded the claim for a determination as to what legal criteria governed the claim because VA regulation 38 C.F.R. § 8.99a had been "deleted as obsolete, effective June 10, 1996", and for readjudication giving consideration to any VA legal opinion issued and to *Karnas v. Derwinski*, 1 Vet.App. 308 (1991). R. at 136; *see also* 61 Fed. Reg. 29,289, 29,289-90 (1996).

In October 1997, the VAIC issued a Supplemental SOC (SSOC) that confirmed the conclusion made in the December 1995 SOC that the TDIP para. (D) language controlled. R. at 144-45. The veteran again disagreed (R. at 148), and the VAIC issued a second SSOC that confirmed the denials in its two previous statements (R. at 150-55). In the March 18, 1998, BVA decision here on appeal, the Board determined that an effective date earlier than September 20, 1994, for the payment of monthly disability benefits under the TDIP was not warranted. R. at 10.

On April 20, 1998, the appellant appealed that BVA decision to the Court. After the appellant filed a brief, after the Secretary filed a motion for summary affirmance, and after the appellant filed a response in opposition to that motion, the Court ordered the Secretary to file a supplemental memorandum addressing whether TDIP para. (D) in the appellant's NSLI policy is consistent with the statutory requirements in 38 U.S.C. § 1915 and to include with that response an appendix containing all of the terms and conditions of the appellant's NSLI policy. The Secretary filed a response, and the appellant filed a reply thereto.

## II. Analysis

4

"An NSLI policy is a contract between the veteran and the United States government. *See* 38 U.S.C. § 1917." *Wolfe v. Gober*, 11 Vet.App. 1, 2 (1997). "The construction of a life insurance policy issued by the United States is governed by federal law." *Curtis v. West*, 11 Vet.App. 129, 132 (1998); *see also Wolfe*, *supra*. The Federal statute governing the TDIP, under para. (D) of which the appellant is making his claim, provides in pertinent part as follows:

> The Secretary shall, except as hereinafter provided, upon application by the insured and proof of good health satisfactory to the Secretary and payment of such extra premium as the Secretary shall prescribe, include in any [NSLI] policy on the life of the insured (except a policy issued under section 620 of the National Service Life Insurance Act of 1940, or section 1922 of this title) provisions whereby an insured who is shown to have become totally disabled for a period of six consecutive months or more commencing after the date of such application and before attaining the age of sixty-five and while the payment of any premium is not in default, ***shall be paid monthly disability benefits from the first day of the seventh consecutive month of and during the continuance of such total disability*** of $10 for each $1,000 of such insurance in effect when such benefits become payable.

38 U.S.C. § 1915 (emphasis added); *see also* 38 C.F.R. § 8.33 (1999). Hence, under section 1915, the Secretary must pay any insured "who is shown to have become totally disabled for a period of six consecutive months or more commencing after the date of such application [for a TDIP] and before attaining the age of sixty-five and while the payment of any premium is not in default". 38 U.S.C. § 1915. Here, there is no dispute that the appellant meets those qualifications.

The statutory authority for the Secretary's inclusion of para. (D) in the TDIP is in 38 U.S.C. § 1906, which provides:

> Provisions for cash, loan, paid-up, and extended values, dividends from gains and savings, refund of unearned premiums, and such other provisions as may be found to be reasonable and practicable may be provided for in the policy of insurance from time to time by regulations promulgated by the Secretary.

38 U.S.C. § 1906. At the time of the appellant's November 1993 application for total-disability benefits, although the texts of the applicable statutory provisions were identical to those of today, the Secretary had in effect a regulation, 38 C.F.R. § 8.99, that he subsequently repealed in 1996, *see* 61 Fed. Reg. 29,289, 29,289-90 (1996); the text of that regulation included the same language as TDIP para. (D) quoted above.

### A. Jurisdiction

The Secretary asserts that 38 U.S.C. § 1906 gives him broad powers to provide NSLI provisions and that these powers are broader than are found in 38 U.S.C. § 501(a), the general grant of regulatory powers to the Secretary. Resp. at 4. He asserts further that the section 1906 language "as may be found to be reasonable and practicable" grants him a large amount of discretion even to the point of defeating this Court's jurisdiction to review his actions. Resp. at 5-6. The Court has previously held that this Court has jurisdiction pursuant to 38 U.S.C. § 7252 to review BVA decisions regarding NSLI claims. *Young v. Derwinski*, 1 Vet.App. 70, 72-73 (1990); *see also Fagan v. West*, 13 Vet.App. 48, 51-52 (1999) (by implication); *Curtis*, *supra*. Nothing presented by the Secretary dissuades us from following that authority in this case.

In an attempt to show that he is given unreviewable discretion by section 1906, the Secretary has cited to 14 statutory provisions that use the words "as may be found" in connection with certain actions authorized by statute. The Court has examined those provisions and concludes that they are unhelpful in the task of statutory construction presented by the instant case. First, none of the 14 statutes include the phrase "as may be found to be reasonable and practicable" or substantially similar language. Second, of the 14 cited statutory provisions, as to only one does there appear to be any caselaw suggesting that the agency's exercise of discretion is not subject to judicial review under that statute, 16 U.S.C. § 499 ("there is hereby appropriated and made available as the Secretary of Agriculture may direct out of any funds in the Treasury . . . so much as may be necessary to refund or pay over to the rightful claimants such sums as may be found by the Secretary of Agriculture to have been erroneously collected"); as to that provision, the particular limitation on review in the court involved, the U.S. Claims Court (now the U.S. Court of Federal Claims), appears to be based on the particular limited jurisdiction of that court over only those statutes that mandate the payment of money by the United States. *Stone Forest Indus. v. United States*, 26 Cl. Ct. 410, 418 (1992).

The other cited provisions are even less persuasive. One cited provision has been suspended by law, 7 U.S.C. § 1358; another involves actions by state governors, not federal agencies, 16 U.S.C. § 939; a third has to do with the format for posting stockyard rates, 7 U.S.C. § 207; a fourth allows an agency to hire staff, 25 U.S.C. § 305a; and a fifth allows the Army Corps of Engineers to make modifications of levees on a backwater of the Red River, 33 U.S.C. § 702a-12. There are apparently no reported cases citing those statutory provisions. A cited mortgage-insurance statute has the

discretionary language but also includes "which are[,] to the maximum extent possible, consistent with provisions otherwise applicable to mortgage insurance and payment of insurance benefits." 12 U.S.C. § 1715z-3(2)(B). Several cited statutory provisions deal with the sharing of evidence or employees and, although those provisions include the discretionary language, they also include language about actions taken pursuant thereto having to be consistent with law, 29 U.S.C. §§ 527, 1136, 1203, 1303; 33 U.S.C. § 1361, thus not paralleling section 1906 in that respect. In any event, the Court finds the subject matter covered by those provisions inapposite in that they do not deal with rights to benefits under federal law.

Somewhat more relevant, but still unavailing, are two cited provisions that have similar limiting language following the discretionary language, 30 U.S.C. § 1013 ("as may be found by the Secretary to be necessary", dealing with surface land use for production, utilization, and conservation of geothermal resources) and 42 U.S.C. § 1472 ("as may be found necessary by the Secretary reasonably to assure repayment", dealing with Department of Agriculture loans for farm housing and buildings); however, no cases have been found concluding that the Secretary's actions under these statutory provisions are not subject to judicial review. *Cf. Adams v. United States*, 42 Fed. Cl. 463, 466 (1998) ("Congress specifically conferred on [Farmers Home Administration] discretion to determine the terms of repayment of section 515 [(42 U.S.C. § 1485)] loans. 42 U.S.C. § 1472(b)(2)."); *Occidental Geothermal, Inc. v. Simmons*, 543 F. Supp. 870, 877-78 (N.D. Cal. 1982) (holding that 30 U.S.C. § 1013 authorizes United States to lease right to build and operate power plants on surface of leased lands).

### B. Statutory Authority

The Secretary argues that, because the claim must be established under the terms of the NSLI contract, the language of TDIP para. (D) controls the outcome of this case and that the Board's determination of the effective date is thus accurate. Motion at 6; Resp. at 7. However, the Secretary also states that "NSLI is a contract of insurance completely statutory in basis and the rights and duties of the parties stem not from the rules of private life insurance but from the pertinent statutes and regulations." Resp. at 8 (quoting *Spaulding v. United States*, 261 F. Supp. 232, 235 (W.D. Okla. 1996)). Put another way, any issuance by the Secretary of rules, regulations, or NSLI provisions may not be inconsistent with the statutory authority granted. *See Brown v. Gardner*, 513 U.S. 115, 122

(1994). Indeed, the Secretary's own regulation so specifies: "Contracts of insurance . . . are subject in all respects to the applicable provisions of title 38 U.S.C. . . . and applicable [VA] regulations promulgated pursuant thereto". 38 C.F.R. § 8.33.

The Secretary, in an attempt to distinguish this case from *Gardner*, *supra*, and *Davenport v. Brown*, 7 Vet.App. 476 (1995), contends that TDIP para. (D) is not inconsistent with the statute because that paragraph does not establish additional criteria for entitlement to a VA benefit. Resp. at 9-11. In *Gardner*, the Supreme Court held that a VA regulation was inconsistent with the controlling statute because the regulation imposed a fault requirement that was not even suggested in the statute. *Gardner*, 513 U.S. at 117-20. In *Davenport*, this Court held that a VA regulation that included a causal-connection requirement was inconsistent with a statute, the mandatory language of which left no room for additional restrictions. *Davenport*, 7 Vet.App. at 482-86. Although TDIP para. (D) does not establish additional criteria, it does impose conditions on an applicant's unconditional statutory entitlement to payments. The question, therefore, is whether that paragraph is inconsistent with the terms of the statute, *see Hermogenes v. Brown*, 9 Vet.App. 75, 78 (1996) (citing *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31-32 (1981)), or whether, in terms of the words of section 1906, TDIP para. (D) is "reasonable".

### C. Statutory Interpretation

"The starting point in interpreting a statute is its language". *Good Samaritan Hospital v. Shalala*, 508 U.S. 402, 409 (1993). The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994); *Fagan*, 13 Vet.App. at 52; *Curtis*, 11 Vet.App. at 133. "If the intent of Congress is clear, that is the end of the matter". *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed. Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)), *aff'ing* 4 Vet.App. 141 (1993) (mem.).

Section 1915 provides that "an insured . . . shall be paid monthly disability benefits from the first day of the seventh consecutive month of and during the continuance of such total disability". 38 U.S.C. § 1915. Here, as in *Skinner*, "[n]owhere does the . . . statute limit the amount of benefits an applicant may receive because of a delay in filing." *Skinner*, 27 F.3d at 1573. In *Skinner*, the

8

statute at issue provided for "monthly payments to certain survivors of military personnel who die[d] during service or as a result of service connected injury or disease" and specified that VA "shall pay [benefits] each month", and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held, in affirming this Court's reversal of a BVA decision denying entitlement to an earlier effective date for benefits under that statute, that "[t]he language of the statute was mandatory, leaving no room for . . . VA to impose additional restrictions on entitlement." *Ibid*. The Federal Circuit concluded there:

> The statute imposes no time restrictions on entitlement; it mandates payment of benefits for each month a covered survivor meets the statutory requirements. The VA's regulations to the contrary conflict with the statute's plain meaning.
>
> Because the plain meaning of the REPS statute shows that Congress did not intend to condition REPS benefits on time specific filing requirements, we need not consider the statute's legislative history. *Darby v. Cisneros*, 509 U.S. 137 . . . (1993). Even if we choose to look to that history, however, "only the most extraordinary showing of contrary intentions" would lead us to disregard the plain meaning of the statute. *Garcia v. United States*, 469 U.S. 70 . . . (1984). The Secretary has made no such showing here.

*Id*. at 1574.

The Secretary attempts to distinguish this case from *Skinner* on the grounds that *Skinner* was not an insurance case and that the applicable statute here does not include the exact language of "each month" as found in 42 U.S.C. § 402, the statute at issue in *Skinner*. Resp. 11. However, we find the emphatic nature of the statutory commands to be indistinguishable and further find that the statutory-interpretation analysis on which *Skinner* is based is equally applicable to our interpretation of the statute in this case.

### D. Gap-filling Authority

The Secretary also makes another argument. He contends that, because "[t]he statute is silent regarding relation back of payments where there is a substantial delay between the onset of total disability and the furnishing of the required proof of entitlement", he has the authority to fill that asserted "gap" by regulation. Resp. at 12. Based on that analysis, the Secretary argues that TDIP para. (D) is a "reasonable and practicable" exercise of his authority apparently because that paragraph provides "the details necessary to administer the statute" under those conditions. Resp. at 8, 12.

9

However, the Secretary's interpretation of a statute deserves deference only "if the statute is silent or ambiguous with respect to the specific issue . . . ." *Chevron*, 467 U.S. at 843; *see also Lofton v. West*, 198 F.3d 846, 850 (Fed. Cir. 1999) (citing *Gilpin v. West*, 155 F.3d 1353, 1355-56 (Fed. Cir. 1998), *cert. denied*, 119 S. Ct. 2019 (1999)); *Skinner*, 27 F.3d at 1575. As we have observed, the statute mandates that an applicant receive benefits beginning in (that is, "from") the seventh month in which he is continuously totally disabled, regardless of when he applied. It does not say "after the seventh month", a wording that might permit the Secretary's provision of TDIP para. (D) and the previous regulation in 38 C.F.R. § 8.99 (1996).

The deficiency in the Secretary's contention that the statute leaves a "gap" for him to fill in becomes all the more apparent when we apply the injunction that "when interpreting statutes, the court is required to look at the context and provisions of the law as a whole." *Degmetich v. Brown*, 104 F.3d 1328, 1332 (Fed. Cir. 1997). The statutory scheme at issue here is title 38 of the United States Code, chapter 19, subchapter I, § 1901-1929, entitled "National Service Life Insurance". An examination of this full statutory context reveals numerous sections within the NSLI subchapter in which Congress demonstrated that it knew well how to provide time restrictions as to the submission of applications for certain actions to be taken pursuant to NSLI policies; specifically: (1) Policy renewal, 38 U.S.C. § 1905 ("renewal will be effected in cases where the policy is lapsed only if the insured makes application for reinstatement and renewal of the term policy *within five years after the date of lapse*" (emphasis added)); (2) payment or use of dividends, 38 U.S.C. § 1907(b) ("[n]o claim by an insured for payment in cash of a special dividend declared prior to January 1, 1952, shall be processed by the Secretary unless such claim was received *within six years after such dividend was declared*" (emphasis added)); (3) waiver of total disability premium, 38 U.S.C. § 1912(b) ("Secretary, upon any application made after August 1, 1947, shall not grant waiver of any premium becoming due *more than one year* before the receipt by the Secretary of application for the same, except as provided in this section" (emphasis added)); (4) death and premiums, 38 U.S.C. § 1913 ("proof of such facts, satisfactory to the Secretary, is filed by the beneficiary with the Department *within one year after the insured's death*" (emphasis added)); (5) service disabled veterans' insurance, 38 U.S.C. § 1922(a) ("[a]ny person who is released from active . . . service . . . and is found by the Secretary to be suffering from a disability or disabilities . . . for which such person

10

would be insurable . . . shall, upon application in writing *made within two years from the date service-connection of such disability is determined* . . . be granted insurance . . . against the death of such person" (emphasis added)); and (6) supplemental service disabled veterans' insurance for totally disabled veterans, 38 U.S.C. § 1922A ("application must be filed *not later than . . . the end of the one-year period* beginning on the date on which the Secretary notifies the person that the person is entitled to a waiver of premiums" (emphasis added)).

The fact that Congress included temporal restrictions on applications for various insurance benefits in numerous other NSLI statutory provisions provides powerful evidence that Congress intended *not* to include such a temporal restriction in section 1915. *See Gardner*, 513 U.S. at 120; *Davenport*, 7 Vet.App. at 484. As we held in *Dippel v. West*, legislation must be construed in light of the rule that "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Dippel*, 12 Vet.App. 466, 474 (1999) (quoting *Gardner*, 513 U.S. at 120 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). We find that presumption fully applicable as to section 1915 and thus find that Congress left no "gap" for the Secretary to fill in with respect to relation back in this context.

### E. Consistency with Statutory Authority

In light of the foregoing analysis, we conclude that TDIP para. (D) does not meet the "not inconsistent with the terms of the statute" standard; moreover, we hold today that that paragraph violates the plain meaning of the statute and is, therefore, not consistent with the statutory requirements of 38 U.S.C. § 1915. Accordingly, we need not defer to VA's TDIP para. (D) because it is contrary to the plain meaning of the statute. *See Gardner*, *Chevron*, and *Skinner*, all *supra*. As the Supreme Court concluded in construing War Risk Insurance policies with respect to veterans of World War I and their beneficiaries:

> The administration was given power to prescribe the form of policies and to make regulations. . . . But no power to curtail the amount of the benefits which Congress contracted to pay was reserved to Congress; and none could be given by any regulation promulgated by the Administrator.

*Lynch v. United States*, 292 U.S. 571, 577-78 (1934).

11

Finally, we note the Secretary's alternative argument that TDIP para. (D) is a proper exercise of his regulatory power under 38 U.S.C. § 501(a) because it "relates to furnishing proof as well as to the manner of an adjudication and award", which are authorized by 38 U.S.C. § 501(a)(1) and (4), respectively. Resp. at 9, 12. The Secretary's authority under section 501(a) is restricted to actions that are "consistent with [the] laws [administered by VA]". 38 U.S.C. § 501(a); *see also Lofton*, *supra*; *Bernier v. Brown*, 7 Vet.App. 434, 437 (1995). Thus, because the Court has held that TDIP para. (D) is ***not*** consistent with the statutory command of section 1915, we need not reach the question of whether clause (1) or (4) both of section 501(a) could provide a valid basis for the regulation in question.

For the reasons set forth above, the Court holds that, to the extent that TDIP para. (D) conflicts with 38 U.S.C. § 1915, that NSLI provision is unauthorized by law and is thus invalid. *See* 38 U.S.C. § 7261(a)(1), (3); 38 C.F.R. § 8.33. In view of that holding, the Court need not address various other arguments made by the appellant relating to disparate treatment, equitable estoppel, and equitable tolling. The Court will thus reverse the decision of the Board denying an effective date earlier than September 20, 1994, and remand the matter for the assignment of an effective date for payments under the TDIP in accordance with 38 U.S.C. § 1915 and this opinion.

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court reverses the March 18, 1998, BVA decision and remands the matter for the Board to issue expeditiously a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1915; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) -- all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). The Secretary's motion is denied. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with

12

the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED AND REMANDED.